IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHARLES COVINGTON, #3050356, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PX-20-2104 |
| WARDEN ARMSTEAD, | * | |
| ASSISTANT WARDEN WOLF, | | |
| MEDICAL ADMINISTRATOR, | * | |
| MARIAM PETERS, | | |
| LT. REED, and | * | |
| LT. LASEEREERS, | | |
| | * | |
| Defendants. | | |

\*\*\*

## **MEMORANDUM OPINION**

Plaintiff Charles Covington[1] filed this action, asserting that staff at Patuxent Institution ("Patuxent") in Jessup, Maryland have been deliberately indifferent to his healthcare needs in the course of dealing with the COVID-19 pandemic. ECF No. 1. Covington has sought, by way of preliminary injunctive relief, that this Court order his removal from Patuxent and place him on home monitoring. *Id.* at 4-5. The Court directed counsel for the Maryland Department of Public Safety and Correctional Services ("DPSCS") to show cause why a preliminary injunction should not issue in Plaintiff's favor. ECF No. 2. The Court also directed Plaintiff to either pay the filing fee or to file a Motion for Leave to Proceed in Forma Pauperis. *Id.* Counsel responded on August 11, 2020, both addressing the pandemic protocol at Patuxent and contending that Plaintiff had failed to exhaust administrative remedies prior to filing his complaint. ECF No. 5. Plaintiff filed nothing further.

For the reasons that follow, Plaintiff's request for injunctive relief shall be denied, and the

---

[1] The Clerk shall amend the docket to correct Plaintiff's last name.

complaint will be dismissed without prejudice because Plaintiff has not exhausted administrative remedies.

Plaintiff asserts that the Patuxent staff has "no medical knowledge of COVID-19" and behaves recklessly when caring for the inmates. ECF No. 1 at 2-3. During the pandemic, Plaintiff had been moved from housing unit C-3, which was possibly contaminated with COVID-19, to a double cell in housing unit D-1. *Id.* at 1-2. Lieutenants Reed and Laseereers effectuated Plaintiff's cell transfer, with approval from Warden Armstead and Assistant Warden Wolf. *Id.* Plaintiff believes this move may have caused him to infect his cellmate, Charles Bridgeford, who had underlying chronic health issues. *Id.* at 2. On or about May 8, 2020, Bridgeford tested positive for COVID-19, but nonetheless, Plaintiff and Bridgeford continued to be housed together. *Id.* at 3-4. To further complicate the situation, says Covington, the cells lack proper ventilation and inmates complaints are going unanswered. *Id.* at 4.

Defendants have submitted records which demonstrate that Plaintiff has been housed at Patuxent since February 11, 2020, serving an aggregate sentence of 2 years, 8 months, and 12 days. Decl. of Laura Armstead, ECF No. 5-9 at ¶¶ 2, 3; Traffic History, *Id.* at p. 4. He does not presently fit the criteria for early release as required by the Maryland Governor's Executive Order 20-04-18-01. ECF No. 5-9 at ¶ 3; Exec. Order, *Id.* at pp. 5-9.

Defendants also chronicle the responses to COVID-19 relevant to Covington. ECF No. 5. However, for purposes of this motion, most relevant is the facility's index for Administrative Remedy Procedure ("ARP") complaints. The record reflects that Plaintiff did not file any ARPs concerning COVID-19. ECF No. 5-9 at ¶ 9. Likewise, a review of Warden Armstead's inmate correspondence log does not indicate that Plaintiff sent any correspondence related to COVID-19 matters. *Id.* at ¶ 10. In addition, no record reflects that Plaintiff filed an ARP appeal with the

Division of Correction ("DOC").  Decl. of DOC Special Assistant Holly Turner, ECF No. 5-11.

A preliminary injunction is an extraordinary and drastic remedy.  *See Munaf v. Geren*, 553 U.S. 674, 689-90 (2008).  A party seeking a preliminary injunction bears the burden of demonstrating: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the party's favor; and (4) why the injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Federal Election Comm'n*, 575 F.3d 342, 346-47 (4th Cir. 2009).  As to irreparable harm, the movant must show the harm to be "neither remote nor speculative, but actual and imminent."  *Direx Israel, Ltd. v. Breakthrough Med. Group*, 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted).

In the prison context, courts should grant preliminary injunctive relief involving the management of correctional institutions only under exceptional and compelling circumstances.  *See Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994).  The Prison Litigation Reform Act provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Although exhaustion under § 1997e(a) is not a jurisdictional prerequisite, the plaintiff must nonetheless exhaust such remedies before this Court will hear the claim.  *See Jones v. Bock*, 549 U.S. 199, 215-16 (2007); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

The exhaustion requirement "allow[s] a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a

useful record." *Bock*, 549 U.S. at 219. The purpose of exhaustion is to encourage pursuit of administrative grievances through final denial of the claims, appealing through all available stages in the administrative process. *Chase v. Peay*, 286 F. Supp. 2d 523, 530 (D. Md. 2003). Because the Court may not consider an unexhausted claim, *see Bock*, 549 U.S. at 220, in this very real sense, exhaustion prior to federal suit is mandatory. *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1857 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Ross*, 136 S.Ct. at 1856 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). Importantly, however, the court must ensure that "any defects in exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Moreover, an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a); *see Ross*, 136 S.Ct. at 1855. An administrative remedy is not "available" where the prisoner, "through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725 (citing *Aquilar-Avellaveda*, 478 F. 3d at 1225); *Kaba*, 458 F.3d at 684.

Maryland state inmates may avail themselves of the administrative grievance process designed for "inmate complaint resolution" by first filing an Administrative Remedy Procedure (ARP). *See generally* Md. Code (2008 Repl. Vol.), Correctional Services Article ("C.S."), §§ 10-201 *et seq.*; Code of Maryland Regulations ("COMAR") 12.07.01.01B(1) (defining ARP). If an ARP is filed and denied, the prisoner may appeal the denial within 30 days to the Commissioner of Correction. If the Commissioner of Correction denies the appeal, the prisoner may file a

grievance with the Inmate Grievance Office (IGO), also within 30 days. OPS.185.0002.05D; C.S. § 10-206(a); C.S. § 10-210; COMAR 12.07.01.05B. If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. C.S. § 10-207(b)(1); *see* COMAR 12.07.01.07B. An order of dismissal constitutes a final decision for purposes of judicial review. C.S. § 10-207(b)(2)(ii).

Here, nothing reflects that Covington pursued administrative remedies. Nor does it appear that any failure to file the grievance occurred because of prison officials' action or inaction. Accordingly, the Court must conclude that Plaintiff filed this lawsuit without first availing himself of the administrative remedy procedure. The claims, therefore, are unexhausted and will be dismissed without prejudice.[2]

As to Covington's request for preliminary injunction, Covington cannot currently succeed on the merits of his Complaint because he has failed to exhaust administrative remedies. Consequently, Covington cannot meet the first *Winter* factor requirement necessary for this Court to grant a preliminary injunction. Alternatively, Covington is no longer housed at Patuxent. *See* http://www.dpscs.state.md.us/inmate/ (last visited October 1, 2020). To the extent Plaintiff seeks injunctive relief in the form of transfer from Patuxent, his claim is also moot. *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987) (holding that the transfer of a prisoner rendered moot his claim for injunctive relief). His request for injunctive relief, therefore, is denied.

A separate Order follows.

<u>     10/5/2020     </u>                                   <u>          /S/          </u>
Date                                                                    Paula Xinis
                                                                              United States District Judge

---

[2] Plaintiff was directed to pay the filing fee or file a Motion for Leave to Proceed in Forma Pauperis if he wished to pursue this action, but he failed to do so. Thus, dismissal is also appropriate on this ground.